RIGGS INVESTMENT MANAGEMENT CORPORATION, et al., Plaintiffs,

v.

COLUMBIA INVESTMENT PARTNERS, L.L.C. et al., Defendants.

Civil Action No. 96–0014(RCL).

United States District Court, District of Columbia.

Aug. 11, 1997.

Eva Petko Esber, Regina G. Maloney, Michael K. Ross, Williams & Connolly, Washington, DC, for plaintiffs.

David Webster, James Sottile, IV, Nathan D. Finch, Caplin & Drysdale, Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on defendant Columbia Investment Partners', L.L.C. ("Columbia Partners") petition for clarification of injunction and to revise its guidelines for presentations. Upon consideration of this motion, the opposition thereto, and the reply, defendant's motion will be granted in part and denied in part, in accordance with the opinion below.

## BACKGROUND

In January of this year, this court conducted a bench trial in which the Riggs Investment Management Corporation ("RIMCO") accused Columbia Partners, another investment management firm, of various forms of false or misleading advertising under the Lanham Act. The court found the defendant corporation liable under the Act, noting that in some instances, Columbia Partners had "operated willfully and in bad faith with respect to its advertising." (Op. at 41). The court, in addition to granting monetary damages to plaintiffs, entered an injunction against Columbia Partners in an effort to control defendant's misstatements about its business and the business of RIMCO. The

court enjoined Columbia Partners to both refrain from making certain representations and to affirmatively make others. The court determined, as well, that "Revised Guidelines" which Columbia Partners both drafted on its own and agreed to abide by, were sufficient to rectify the legal breaches Columbia Partners was found to have made. The court therefore enjoined defendant to follow these "Revised Guidelines," in addition to other injunctive relief required by the court. As a final measure, the court dictated that Columbia Partners must apply to the court for the next three years if defendant desired to depart from these guidelines.

Now, defendant seeks both to clarify the injunction and re-revise its revised guidelines for presentation.

## I. Clarification of Injunction

The court's injunction presently requires that Columbia Partners not portray, either orally, in writing, or on a computer database, its performance record in a manner which links its record to RIMCO's, as outlined this court's May 12, 1997 memorandum opinion. Defendant asks whether this provision applies in a situation where a consultant, for its own purposes, chooses to link Columbia Partners' record with RIMCO's in the consultant's own internal database. Columbia Partners argues that there is a distinction between "external databases" like Mobius and PSN which consultants screen when developing lists of money managers as possible firms for client use—where the information is raw and comes directly from Columbia Partners, and "internal databases," which consultants develop on their own to represent pictures of an investment management firm's performance that will be helpful to the consultants in advising their clients. See, Def.'s Pet. for Clar., July 10, 1997 at 2–5. Defendant argues that the injunction does not require it to actively request that consultants withdraw RIMCO's record from any representations they may have personally created which "link" the two firms' performance records, creating a seamless record, dating back to 1989, despite Columbia Partners' formation in 1995. Defendant argues that it does not "portray" any linked record

when it submits accurate information. If a consultant chooses to do so, the consultant is the one "portraying" the information, and the guidelines should not require Columbia Partners to make that consultant change the way in which he or she has desired to record the investment information.

RIMCO objects. RIMCO believes the distinction between "external" and "internal" databases is a false one, especially because the information consultants have relied upon in creating "internal" databases was due to inaccuracies created by Columbia Partners. RIMCO argues that "equity and fairness dictate that the Court's injunction be recognized to require Columbia Partners to do with respect to consultants what it has already done with respect to Mobius and PSN—ask them to delete from their databases the improperly linked performance numbers Columbia Partners gave them."

Columbia Partners suggests that its "Statement of Correction and Retraction," which includes all disclosures required by its Revised Guidelines for Presentation, is sufficient to notify consultants that records should not be linked together.

■ After careful consideration, the court agrees with Columbia Partners' position. As RIMCO notes, this court's most serious problem with Columbia Partners with regard to its habit of "linking" its record with RIMCO's on databases was not simply that it misrepresented actual performance, but that the defendant outright lied in stating that it complied with AIMR standards when it in fact knew linking was prohibited by AIMR. While the court continues to forbid this practice of linking by Columbia Partners, it cannot say that a private consultant, after reviewing Columbia Partners' two-year-old record, and after reviewing RIMCO's record, and after reviewing the disclosures given by Columbia Partners in accordance with its Revised Guidelines, decides that for *his or her* purposes the numbers are worthy of putting together in a linked fashion, that such a decision would be improper and attributable to defendant. As this court has already indicated, all references to RIMCO's record need not be removed from any Columbia Partners' presentation, because, after

all, people at Columbia Partners—most significantly Robert von Pentz, helped develop that record and are entitled to indicate this fact. Thus, a consultant who chooses to piece together all information presented is free to do so in any manner which will be helpful to the consultant's selection of an investment manager for his or her client.

There is a significant caveat, however, which RIMCO has brought to this court's attention. RIMCO argues that to the extent consultants forward to Columbia Partners printouts of questionnaires or databases for verification or correction which reflect linked performance data previously provided by Columbia Partners, Columbia Partners must actively correct any previously supplied false or misleading information. Pl.'s Opp. at 6. Columbia Partners has stated that it understands the injunction merely to require it to state that Columbia Partners does not link its record with that of RIMCO's and "to tell the consultant it cannot verify the performance information as presented because of the linked records." Pl.'s Pet. for Clar. at 7.

This presents quite a different situation than merely allowing consultants to arrange data in their own fashion—even if that includes linking. In that case, Columbia Partners may have no knowledge or control over who is doing what with the information provided. But where a consultant has actively sought out the defendant for verification of numbers, Columbia Partners' interpretation of the injunction would allow it to knowingly sit by while false information is returned to the consultant. But this misses completely the point of the injunction. The point is to get at the truth of who is responsible for the successes of each company and to what degree. It does not facilitate the goal of establishing truth for Columbia Partners to simply decline to verify numbers it knows are wrong, false, or misleading. The court does not wish to make Columbia Partners treat investment consultants like children or force defendant to micro-manage consultant's personal information systems. But, when confronted with a request to verify linked information, Columbia Partners may not sit idle. It must report back to the consultant that Columbia Partners' record dates back to

1995 only, and that any prior performance was achieved by RIMCO. Columbia Partners is free to refer to von Pentz's role, etc. in creating RIMCO's record, in accordance with its Revised Guidelines, but it may not turn a blind eye to a request by a consultant for verification of linked numbers.

## II. *Columbia Partners' Petition to Revise its Guidelines for Presentation*

Defendant now seeks to modify its guidelines to cover a situation not previously addressed. That is, its current "Revised Guidelines" mandate that any time a Columbia Partners representative discusses the Columbia Partners' computer model, he must also state that Philip Tasho and Clifford Dyhouse (who were both at RIMCO with von Pentz) contributed to that model as well as von Pentz. Defendant argues that the rationale for this disclosure does not apply "if Columbia Partners is merely discussing the model in the context of how it is used to select stocks by Columbia Partners, and there is no discussion of Mr. von Pentz's role in creating it, or its use in connection with the RIMCO record." Pl.'s Pet. for Clar. at 10. Defendant argues that Tasho's and Dyhouse's roles are simply irrelevant in such a circumstance, injecting a discussion of the model's creation and its use at another firm when such issues are not germane.

While this seems innocuous enough, RIMCO has pointed out the cunning with which Columbia Partners has suggested language to implement this. Paragraph 4 of the "Revised Guidelines" presently reads:

Any time you discuss the analytical strategy which Columbia Partners uses to screen stocks you must state the following:

The analytical strategy Columbia Partners uses is similar to the one developed and used by Mr. von Pentz at Maryland National Bank, ASB Capital and at RIMCO Messrs. Tasho and Dyhouse contributed certain refinements to the strategy.

This strategy presents possible stocks for investment and Mr. von Pentz then selects particular stocks from those presented.

Again, because the analytical strategy has played a part in the investment philosophy and process used successfully by Mr. von

Pentz in the past is no indication that any past performance will continue.

Columbia Partners would revise paragraph 4 to read:

Any time you discuss the **computer model** which Columbia Partners uses to screen stocks **with someone who has not already received the required disclosures** you must **disclose** the following:

The **model** presents possible stocks for investment and Mr. von Pentz then selects particular stocks from those presented.

**Although** the **model** has played a part in the investment philosophy and process used successfully by Mr. von Pentz **at Columbia Partners, that** is no indication that any past performance will continue.

**If you mention (or are asked questions about) Mr. von Pentz's role in creating the RIMCO model, the RIMCO performance record, or the use of the model at RIMCO, then you must also disclose the following:**

The **model** Columbia Partners uses is similar to the one developed and used by Mr. von Pentz at Maryland National Bank, ASB Capital and at RIMCO.

Messrs. Tasho and Dyhouse contributed certain refinements to **the model while they were at RIMCO.**

**The disclosures about the computer model set forth above may be made orally or in writing.** [Proposed changes are in bold.]

RIMCO opposes any modification of the proposed guidelines. It argues that modifications, especially to fit new language proposed by defendant, would thwart the injunction itself. RIMCO raises the following issues.

■ 1. Columbia Partners' suggested language would require disclosure of Tasho and Dyhouse only if defendant mentions or is asked questions about "Mr. von Pentz's role in creating the RIMCO model, the RIMCO performance record, or the use of the model at RIMCO." Plaintiff believes that under the proposed revisions, unless RIMCO is specifically mentioned by name, Columbia Partners can craftily avoid giving any credit to Tasho and Dyhouse where it is clearly

due, especially because the model used at Columbia Partners is based on the one used at RIMCO. Thus RIMCO submits that if any modification to the guidelines is allowed, it should specify "that disclosures regarding the contributions of Tasho and Dyhouse to the model must be made when discussion (or when asked about) the origins of the model generally or von Pentz's history with the model prior to joining Columbia Partners."

The court agrees. The court believes that defendant need not inject discussions of the model's origin or von Pentz's use of the model when not relevant. However, the word "RIMCO" is not the trigger for that disclosure to take place. Rather, when discussing the origins of the model generally or when discussing von Pentz's history with the model prior to joining Columbia Partners, the disclosure of Tasho and Dyhouse are required.

■ 2. Columbia Partners seeks to add language to the "Revised Guidelines" that would require the necessary disclosures about Tasho and Dyhouse to be made only to "someone who has not already received the required disclosures." Defendant proffers that in many instances, a Columbia Partners' representative holds follow-up meetings or telephone conversations with prospective clients within days or even the very day of an initial meeting. It would be "senseless," defendant maintains, to require a Columbia Partners' employee to "restate the exact same information to the same person with whom he had spoken shortly before." Def.'s Reply at 10.

RIMCO is concerned, however, that defendant will simply make no disclosures,'and once caught, say merely that it thought the disclosures had already been made.

Though Columbia Partners says it "has followed and will follow its guidelines," the court is wary of this flippant statement. It has only been required to follow these guidelines for a few short months—guidelines defendant drafted itself—yet Columbia Partners has already sought relief. Though the court has said it will grant some measure of flexibility to defendant, it is still concerned about Columbia Partners' ability, in defen-

dant's words, to "err on the side of caution" in a circumstance where there is doubt as to whether a party has been informed of the information required by the "Revised Guidelines."

But as the court has altered the guidelines to require a discussion of the model only when its origin or von Pentz's prior use of it is discussed or asked about, it seems unlikely that this discussion will be frequent with the same client. And if a client is so concerned with the model and its origins that he or she repeatedly wants to discuss it with a Columbia Partners' employee, there may well be good reason to require the repeated disclosure of Tasho and Dyhouse and their respective roles in creating the model. The request to limit such disclosures only to people who have already been informed will thus be denied.

■ 3. Columbia Partners' proposed language would revise the "Revised Guidelines" to state that Tasho and Dyhouse contributed certain refinements to the model "while they were at RIMCO." Plaintiff fears that defendant would use this added language as a ruse to suggest that Tasho and Dyhouse were at RIMCO but are no *longer* at RIMCO. Tasho and Dyhouse are currently at RIMCO. Both had left to go elsewhere, but returned after von Pentz's departure. The court agrees that the proposed wording suggests that Tasho and Dyhouse are no longer at RIMCO, even though they are. As defendant's proposed amendment would be misleading, it is therefore denied by the court.

■ 4. Finally, RIMCO objects to Columbia Partners' desire to now allow the disclosures about the computer model to be made "either orally or in writing." RIMCO believes that this will allow defendant to skirt the requirement that face-to-face presentations be made before RIMCO's record is discussed, and that there would be no opportunity for follow-up questions by prospective clients.

Defendant, however, finds this argument off the mark, because face-to-face presentations will still be required, giving prospective clients an opportunity for follow-up questions.

The court does not accept defendant's explanation for this change in the guidelines. If Columbia Partners makes an oral presentation discussing the origins of the model, etc. as described above, it must orally mention Tasho and Dyhouse. Otherwise, it could make an entire presentation, ignoring these two contributors to the model, and bury some information in an accompanying pamphlet which it would then hand to the client after the presentation.

Therefore, the court will deny Columbia Partner's request to allow for written as opposed to oral disclosures.

### CONCLUSION

For the reasons stated above, Columbia Partners' petition for clarification of injunction and to revise its guidelines for presentations will be granted in part and denied in part.

A separate order shall issue this date.

### ORDER

In accordance with the accompanying memorandum opinion and in conjunction with the injunction entered on May 12, 1997, it is hereby ORDERED

that defendant Columbia Investment Partners, L.L.C.'s ("Columbia Partners") petition for clarification of injunction and to revise its guidelines for presentations is hereby GRANTED in part and DENIED in part; and it is further ORDERED that the injunction entered on May 12, 1997 which, among other things, enjoined Columbia Partners to follow its "Revised Guidelines for Presentations," is hereby clarified so as to forbid Columbia Partners from the practice of "linking" Columbia its record to that of RIMCO with respect to information it provides to consultants and professional databases, as outlined in the memorandum opinion of May 12, 1997, but not to forbid private consultants, on their own personal databases, from representing this information in any manner they believe helpful, provided Columbia Partners has made all required disclosures and corrections. Columbia Partners need not ask consultants to remove all references to the RIMCO equity performance record even

if that consultant has chosen to portray this information in his or her own internal database in a manner which "links" performance records. Columbia Partners does have an affirmative duty to correct improperly linked data when requested for verification by consultants, as outlined in the accompanying memorandum opinion; and it is further ORDERED

that Columbia Partners is hereby ENJOINED to follow its "Revised Guidelines for Presentations," as amended pursuant to the accompanying memorandum opinion, and as attached hereto as Appendix A.

SO ORDERED.

## *APPENDIX A*

To ORDER of August 11, 1997 in
Civil Action No. 96–0014.

"Amended Revised Guidelines
for Presentations"

1. Former employment status and titles of CP personnel

You may say the following about Mr. von Pentz and the other RIMCO employees (other than Messrs. Tasho & Dyhouse).

a. Mr. von Pentz was employed by RIMCO from June 1989 until September 1995. While there, he held a number of positions, including Director of Equity Research and Strategy, Chief Investment Officer, Chairman, and Executive Director. He was Chief Investment Officer of RIMCO from October 1989 until September 1995.

b. The whole RIMCO equity research department as it was constituted in September 1995 is now at Columbia Partners;

2. The performance record of RIMCO

a. The numerical performance record of RIMCO through 9/30/95 is a matter of public record.

b. The only documents reflecting RIMCO's numerical performance record which you may use are those obtained from the Mobius database. Do not give out these documents unless requested to by a client, prospective client or consultant and then only in face-to-face presentations. Do not mail (or otherwise send by some means of long-distance delivery) the Mobius database record to anyone unless they have been shown the Mobius database record in a face-to-face presentation.

c. All copies of the RIMCO numerical performance record which are distributed by Columbia Partners must have the disclosure footnote that our lawyers have drafted on the front side of the sheet.

d. Do *not* create any documents yourselves to be given to third parties which set out the numerical RIMCO performance record. This is an absolute prohibition. Any letter, memo or other document to be shared with third parties which mentions "Riggs" or "RIMCO" *must* be cleared by Colleen Kelly before use.

3. Two Qualifications Which Must Be Given

There are two qualifications which *must* be me expressed any time you discuss the RIMCO performance record with any outside parties (clients, prospective clients or consultants) or give them copies of documents reflecting that performance.

a. Past performance is no indication of the future;

b. Two persons who made significant contributions to the RIMCO performance record left RIMCO in June 1994 and are not currently with Columbia Partners. They are Philip Tasho, Director of Equity Strategy and Management from January 1990 to June 1994, and Clifford Dyhouse, Associate Director and later Director of Quantitative Research from 1990 to September 1994.

To summarize, whenever you discuss the RIMCO performance record with any third parties, you must disclose not only that Tasho and Dyhouse significantly contributed to that performance but also what Tasho's and Dyhouse's positions with RIMCO were at the time.

4. Mr. von Pentz's Analytical Strategy

Any time you discuss the computer model which Columbia Partners uses to screen stocks you must state the following:

The model presents possible stocks for investment and Mr. von Pentz then selects particular stocks from those presented.

Although the model has played a part in the investment philosophy and process used

14

successfully by Mr. von Pentz at Columbia Partners, that is no indication that any past performance will continue.

If you mention (or are asked questions about) Mr. von Pentz's role in creating the model or Mr. von Pentz's history with the model prior to joining Columbia Partners, then you must also mention the following:

The model Columbia Partners uses is similar to the one developed and used by Mr. von Pentz at Maryland National Bank, ASB Capital and at RIMCO.

Messrs. Tasho and Dyhouse contributed certain refinements to the model.

5. Do not talk about Tasho or other current employees of RIMCO, except as outlined in these guidelines. Particularly do not disparage Tasho, RIMCO or Dyhouse.

It is imperative that you follow to the letter these Revised Guidelines for Presentations. Colleen Kelly is hereby appointed the Columbia Partners officer responsible for ensuring compliance with the Guidelines. Any questions concerning the Guidelines should be addressed in the first instance to Ms. Kelly. If necessary, she will consult with our attorneys. Although an exception to these Guidelines may be made in a specific case, any such action must first be cleared by Ms. Kelly. Failure to follow these Guidelines will result in disciplinary action.